UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:21-CR-30074-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS AND ADOPTING REPORT AND RECOMMENDATION |
| BUDDY ROBERT POOR BEAR, | |
| Defendant. | |

A federal grand jury indicted Defendant Buddy Robert Poor Bear on one count of Sexual

Abuse. Doc. 1. Poor Bear moved to suppress statements he made to Special Agent Matthew

Tucker with the Rosebud Sioux Tribal police during an interview conducted in mid-April 2021,

the day after his arrest.[1]  Doc. 34.    Magistrate Judge Mark A. Moreno issued a report

recommending that Poor Bear's motion to suppress be granted in part and denied in part. Doc. 54

at 1, 12. Poor Bear now objects to the report and recommendation. Doc. 57. Having conducted

---

[1] Poor Bear also moved to suppress three other pieces of evidence collected from him on April 15, 2021, the day of his arrest: preliminary breath test (PBT) results, Doc. 34, drug test results, Doc. 44, and statements Poor Bear made to Officer Chad Roe while Poor Bear was detained in another officer's vehicle, Doc. 37. At the suppression hearing, the United States conceded that the PBT and drug test results will not be offered and should be excluded. Doc. 48 at 7–8. The United States further conceded that Poor Bear's statements to Officer Roe violated Miranda v. Arizona, 384 U.S. 436, but reserved the right to offer the statements as impeachment evidence if Poor Bear testifies contrary to them at trial. Id. at 5–7. Accordingly, this Court adopts Judge Moreno's report and recommendation with respect to the PBT and drug test results, and this evidence is suppressed for all purposes.   This Court further adopts Judge Moreno's recommendation that Poor Bear's statements to Officer Roe be suppressed as substantive evidence. At this time, this Court does not render an opinion any remaining impeachment issues.

1

a de novo review of those portions of the report and recommendation to which Poor Bear objects, this Court adopts the report and recommendation.

## I.      Standard of Review

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murrillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)).

## II.     Factual Background

A detailed overview of the relevant facts is available in Judge Moreno's report and recommendation. Doc. 54 at 2–4. This Court has reviewed the record independently and agrees with Judge Moreno's factual findings, which are essentially uncontested.

On April 15, 2021, tribal police arrested Poor Bear for an alleged sexual assault at a home on the Rosebud Indian Reservation. Mot. Hr'g Tr. at 13 [hereinafter T.]. Special Agent Matthew Tucker interviewed Poor Bear at the adult correctional facility the next day. T. at 15–16.

Before commencing the interview, Agent Tucker attempted to get some biographical information from Poor Bear. T. at 16–17; Ex. 12 at 2–4. Agent Tucker testified that he asks for this information so he can "identify the person, where they are enrolled, [and] where they live" and collect "contact information," in case he needs to "get ahold of them" or "find them later." T. at 17. Agent Tucker further testified that he asks these questions to get a sense of whether the suspect is competent and capable of having a conversation. T. at 17.

In this initial dialogue, Agent Tucker generally asked Poor Bear about his name, how he was feeling, whether he was under the influence of any alcohol, drugs, or medication, his educational level, and whether he spoke any languages other than English. Ex. 12 at 1–4. Agent Tucker and Poor Bear then had the following exchange:

| Agent Tucker: | . . . Do you have a physical address? |
|---|---|
| Poor Bear: | Uh, well I was staying at one – thirty North Washington. Uhm, and I was just staying at my moms[2] for a few days, you know. Uh, 'cause where I was staying at, one – thirty North Washington, |
| Agent Tucker: | Where's one – thirty North Washington? |
| Poor Bear: | Yeah, that's in Mission. |
| Agent Tucker: | Oh, okay. |
| Poor Bear: | And uh, that's where I'm living now. And that's where Celeste Beauvais lives, I just stay there occasionally. But she doesn't want me drinking, so, that's why I was at my mom's house . . . . |
| Agent Tucker: | Okay. |
| Poor Bear: | - drinking. I was going to stay at my friend's house, in Valentine, but, I -sh, I didn't. I didn't do that, I should have just, I should have went to Valentine, I should have just stayed out of that, out of that area. |

Ex. 12 at 4. Agent Tucker testified that he asked Poor Bear for his physical address so that he could find him at a later time and input the information into their database. T. at 19. On cross-examination, Agent Tucker denied that he asked for Poor Bear's physical address so he could "place him at a location where a crime is alleged to have occurred," but he admitted that such information could, in theory, turn out to be incriminating. T. at 23.

---

[2] Poor Bear's familial relation to the owner of the house where he was staying is unclear, but the record suggests that his "mom's" house was the scene of the alleged crime. T. at 14–15.

Immediately following the above exchange, Agent Tucker diverted the conversation and turned Poor Bear's attention to an Advice of Rights form. Ex. 12 at 4; see also Ex. 6. Agent Tucker read the <u>Miranda</u> warning from the form, and Poor Bear initialed that he understood each warning. Ex. 12 at 5; Ex. 6. Poor Boor then read the last portion of the form aloud and indicated that he did not want to answer questions without a lawyer present:

| | |
|---|---|
| **Agent Tucker:** | . . . Now this is the Waiver of Rights portion. It's, I'll just have you read that out loud for me, okay. |
| **Poor Bear:** | I have read the statement of my rights and understand that what my rights are, at this time I'm willing to answer questions without a lawyer present. |
| **Agent Tucker:** | Are you willing to do that? |
| **Poor Bear:** | No. |
| **Agent Tucker:** | No? Okay. And, All right. That's fine . . . |

Ex. 12 at 5–6.

Recognizing that Poor Bear did not consent to an interrogation, Agent Tucker again changed the subject and continued:

| | |
|---|---|
| **Agent Tucker:** | . . . Um, Bud, one of the other things that we do in these type of investigations, is we co-collect DNA. |
| **Poor Bear:** | Okay. |
| **Agent Tucker:** | Okay? |
| **Poor Bear:** | All right. |
| **Agent Tucker:** | Um, is that something that you would, |
| **Poor Bear:** | Actually, that's what I wanted, 'cause I, I was really worried when I first came here. |
| **Agent Tucker:** | Okay. And that, yep, that's |

4

| Poor Bear: | 'Cause then I have to have, if something did happen, there'gonna be evidence. |
| Agent Tucker: | Right. |
| Poor Bear: | I know that, so. You know, nothing happened, but, I ne- |
| Agent Tucker: | Okay. |
| Poor Bear: | I need that evidence. |

Ex. 12 at 6. Poor Bear signed a waiver consenting to the DNA swab and Agent Tucker helped him collect the sample. Ex. 12 at 7–8. Agent Tucker left the interview room shortly thereafter. Ex. 12 at 8–9.

## III.    Discussion

There are two general issues before this Court: (1) whether Agent Tucker violated Miranda v. Arizona, 384 U.S. 436 (1966), when he asked Poor Bear for his physical address before reading him his rights; and (2) whether Agent Tucker violated Miranda when he requested a DNA swab from Poor Bear after Poor Bear indicated he would not consent to an interrogation. Judge Moreno answered both questions in the negative. Doc. 54 at 11. This Court agrees with Judge Moreno's conclusions, and therefore overrules Poor Bear's objections and adopts the report and recommendation.

### A. Pre-Miranda questioning

The basic requirements of Miranda are well established in the Eighth Circuit: "The familiar Miranda rule provides as a general matter that investigators must communicate warnings to a suspect before conducting a custodial interrogation." United States v. Armstrong, 39 F.4th 1053, 1056 (8th Cir. 2022).[3] Notably, a defendants statements are only inadmissible under Miranda "if

---

[3] As this Court has noted previously:

they were the product of 'custodial interrogation.'" <u>United States v. Tapia-Rodriguez</u>, 968 F.3d 891, 894 (8th Cir. 2020) (quoting <u>Miranda</u>, 384 U.S. at 444). "In determining whether a defendant was in custody, the critical inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>United States v. Simpson</u>, No. 21-2463, 2022 WL 3350604, at *2 (8th Cir. Aug. 15, 2022) (cleaned up and citation omitted). "The Supreme Court has defined 'interrogation' as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.'" <u>Tapia-Rodriguez</u>, 968 F.3d at 894 (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980)).

There is no dispute that Poor Bear was in custody when Agent Tucker interviewed him. The sole issue is whether Agent Tucker's question regarding Poor Bear's physical address before reading him his rights was improper interrogation. Under <u>Miranda</u>, "a request for routine information necessary for basic identification purposes is not interrogation." <u>United States v. Armstrong</u>, 39 F.4th 1053, 1056 (8th Cir. 2022) (citation omitted). That is, "there is a 'routine booking question' exception to <u>Miranda</u> for questions 'to secure the biographical data necessary to complete booking or pretrial services,' as long as the questions are asked 'for record-keeping purposes only' and are not 'designed to elicit incriminatory admissions.'" <u>Id.</u> (quoting <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601–02 n. 14 (1990).

---

Most anyone who has watched a police drama on television could likely name at least one of the four warnings required by Miranda. They are: (1) you have the right to remain silent; (2) anything you say can be used against you in a court of law; (3) you have the right to the presence of an attorney; and (4) if you cannot afford an attorney one will be appointed for you before any questioning if you so desire. <u>United States v. Story</u>, No. 3:20-CR-30088-RAL, 2021 WL 1423378, at *3 (D.S.D. Apr. 15, 2021), <u>aff'd</u>, No. 21-2847, 2022 WL 1468782 (8th Cir. May 10, 2022).

Judge Moreno concluded that Agent Tucker "could ask for identifying and contact information, including whether Poor Bear had a physical address without having to administer <u>Miranda</u> warnings." Doc. 54 at 6. Judge Moreno further concluded that "the circumstances of the interview reveal that Tucker's intent was administrative rather than investigatory" and that "those questions were intended to gather contact information and establish Poor Bear's state of mind and ability to communicate." <u>Id.</u> Having conducted a de novo review of the interview, this Court agrees with those factual findings.

Poor Bear objects to Judge Moreno's reliance on <u>United States v. Temple</u>, No. S1-4:15 CR 230-1 JAR (JMB), 2017 WL 7798109 (E.D. Mo. Oct. 6, 2017), <u>report and recommendation adopted</u>, No. 4:15-CR-230-JAR-L, 2018 WL 1116007 (E.D. Mo. Feb. 27, 2018), arguing that his case is "factually distinguishable."[4] <u>See</u> Doc. 57 at 2. There is a factual distinction between <u>Temple</u> and the present case, but that distinction does not weigh in Poor Bear's favor. In <u>Temple</u>, a <u>Miranda</u> issue was presented when, before reading the <u>Miranda</u> warnings, the detective asked the suspect about his connection to a specific address that was known to the police as the site of substantial and serious criminal activity. <u>Temple</u>, 2017 WL 7798109 at *23. Here, Detective Tucker asked Poor Bear a very simple question: "Do you have a physical address?" Ex. 12 at 4.

---

[4] Poor Bear also takes issue with Judge Moreno's cite to <u>United States v. Sepulveda-Sandoval</u>, 729 F.Supp.2d 1078. Poor Bear quarrels with that case ostensibly for the same reason he disputes Judge Moreno's cite to <u>Temple</u>—that is, to argue that Agent Tucker's question about his physical address falls outside of the booking question exception. This Court rejects that argument for the same reasons it rejects Poor Bear's reliance on <u>Temple</u>. Additionally, it appears Judge Moreno relied on <u>Sepulveda-Sandoval</u> to support the proposition that "the routine booking question exception applies even though Poor Bear had been arrested and was in custody." <u>See</u> Doc. 54 at 6 n.16. To the extent that Poor Bear takes issue with that holding, this Court is not swayed otherwise. Setting <u>Sepulveda-Sandoval</u> aside, the relevant inquiry is whether the pre-<u>Miranda</u> question is "for record-keeping purposes" or "designed to elicit incriminatory admissions[,]" not whether the officer asking the questions is formally considered the arresting or booking officer. <u>See</u> Armstrong 39 F.4th at 1057-58 (citations omitted) (cleaned up) (noting that booking exception also applies to pretrial services in addition to booking procedures).

Rather than answer the question asked, Poor Bear volunteered not only his physical address, but where he had been staying for the past few days—the scene of the alleged crime. Id. Poor Bear also volunteered that he wished he had not stayed there. Id.

Agent Tucker did not ask Poor Bear whether he had a physical address because Agent Tucker expected to elicit admissions that Poor Bear had been staying at the victim's house because that was where he could drink and that he regretted his decision to do so. Poor Bear's argument that the question violated Miranda expects a level of clairvoyance from Agent Tucker not imputed under law, asserting that Agent Tucker should have known his question about Poor Bear's address could elicit an incriminating response because it "puts the Defendant at the residence where the alleged offense occurred." See Tapia-Rodriguez, 968 F.3d at 894 (whether police should have known question was reasonably likely to elicit an incriminating response is an objective standard); United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996) ("We have said: A request for routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating.") (citation omitted).  If this Court were to accept such an argument, the routine booking information exception would be rendered meaningless. Cf. Armstrong, 39 F.4th at 1057 (declining to exclude routine employment questions from booking process in drug trafficking cases even though virtually every drug trafficking investigation involves suspect's finances).  As Judge Moreno put it, "if Poor Bear's gratuitous statements were inculpatory, they were his own doing and he has only himself to blame." Doc. 54 at 8; cf. United States v. Jackson, 852 F.3d 764, 771 (8th Cir. 2017) ("Volunteered statements of any kind are not the product of police interrogation and thus are not barred by the Fifth Amendment.") (cleaned up and citation omitted). Accordingly, Poor Bear's objections to the report and recommendation that pertain to Agent Tucker's pre-Miranda questions, Doc. 57 at 1–3, are overruled.

**B. Post-<u>Miranda</u> Request for DNA Swab**

Once <u>Miranda</u> warnings have been given, if the individual in custody indicates that they wish to remain silent, the interrogation must stop. <u>Miranda</u>, 384 U.S. 436. In other words, once the suspect invokes his <u>Miranda</u> rights, the police must not engage in any further "express questioning or its functional equivalent" that they "should know are reasonably likely to elicit an incriminating response." <u>Jackson</u>, 852 F.3d at 771 (citation omitted). The Eighth Circuit has clearly indicated that "a consent to search is not an incriminating statement." <u>Cody v. Solem</u>, 755 F.2d 1323, 1330 (8th Cir. 1985); <u>see also</u> <u>Tapia-Rodriguez</u>, 968 F.3d at 895 ("We have never held that a request to search must be preceded by <u>Miranda</u> warnings, or that a lack of <u>Miranda</u> warnings invalidates a consent to search.") (citation omitted).

After Poor Bear indicated he was not willing to continue with an interrogation, Agent Tucker requested that Poor Bear complete a cheek swab for DNA evidence. Ex. 12 at 6. Judge Moreno deemed this request not "interrogatory within the meaning of <u>Miranda</u>." Doc. 54 at 8. Poor Bear objects and argues that the request was "the functional equivalent of express questioning" and "because Defendant had already invoked <u>Miranda</u>, any subsequent statements elicited from this question by the agent must be suppressed[.]" Doc. 57 at 3.

This Court agrees with Judge Moreno that Agent Tucker's request that Poor Bear complete a cheek swab after he refused to waive his rights did not violate <u>Miranda</u>. <u>See</u> <u>United States v. Calvetti</u>, 836 F.3d 654, 663 (6th Cir. 2016) (holding that the defendant's consent to search, given after she invoked her <u>Miranda</u> rights, was "not a self-incriminating statement subject to the protections of the Fifth Amendment"); <u>United States v. Bustamante</u>, 493 F.3d 879, 892 (7th Cir. 2007) ("Though all interrogation must cease once a defendant in custody has invoked his right to counsel, a request to search . . . is not likely to elicit an incriminating response and is therefore not

9

interrogation."); <u>United States v. Taylor</u>, 202 F. 232 (4th Cir. 2000) (per curiam) (finding no <u>Miranda</u> violation where police asked defendant for consent to search after he invoked his right to remain silent); <u>United States v. Knight</u>, 58 F.3d 393, 397 (8th Cir. 1995) ("[T]he Fifth Amendment's protection against self-incriminating statements may limit further interrogation once a person in custody invokes his right to counsel, but there is no similar prohibition on securing a voluntary consent to search for physical evidence."). The case law on this issue is clear, and Poor Bear's objection to the contrary, Doc. 57 at 3, is overruled.

## IV.   Conclusion

For the reasons stated above, it is hereby

ORDERED that the Report and Recommendation, Doc. 54., is adopted. It is further

ORDERED that Poor Bear's Motion to Suppress and corresponding supplements, Doc. 34; Doc. 37; Doc. 44, are granted in part and denied in part as set forth in this Opinion and order.


DATED this 2nd day of September, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE